**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| IN RE SUBPOENA TO CORWIN ZASS | Case No. 1:26-MC-01730-XR |

# LEADENHALL'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL NON-PARTY CORWIN ZASS TO RESPOND TO SUBPOENA DUCES TECUM

# TABLE OF CONTENTS

**Page**

I. Mr. Zass Concedes That He Possesses Responsive Documents........................................ 1

II. Documents in Mr. Zass' Possession May Not Be Obtained from the Parties. ................... 2

III. Mr. Zass Has Not Substantiated Any Burden of Responding to the Subpoena, Which Leadenhall Has Repeatedly Offered to Narrow as Necessary. ............................... 3

IV. Cost-Shifting Is Unwarranted. ........................................................................................... 4

V. Conclusion ........................................................................................................................... 5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of Musicians v. Skodam Films, LLC*,
313 F.R.D. 39 (N.D. Tex. 2015) ....................4

*Andra Grp., LP v. JDA Software Grp., Inc.*,
312 F.R.D. 444 (N.D. Tex. 2015) ....................2, 3, 4, 5

*El Paso Disposal, LP v. Ecube Labs Co.*,
2025 WL 1879607 (W.D. Tex. July 3, 2025) ....................3

*Flynn v. Sanchez Oil & Gas Corp.*,
2020 WL 4353180 (W.D. Tex. July 29, 2020) ....................4

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
894 F.2d 1482 (5th Cir. 1990) ....................4

*Simms v. Nat'l Football League*,
2013 WL 11570288 (N.D. Tex. Oct. 22, 2013) ....................4, 5

*Williams v. City of Dallas*,
178 F.R.D. 103 (N.D. Tex. 1998) ....................2, 3, 4

*Wiwa v. Royal Dutch Petroleum Co.*,
392 F.3d 812 (5th Cir. 2004) ....................2, 3

**Other Authorities**

Fed. R. Civ. P. 26 ....................2

Fed. R. Civ. P. 45 ....................4

Mr. Zass' opposition (ECF 10) ("Opp.") confirms the bases for Leadenhall's motion to compel (ECF 7–8) ("Mot."). Mr. Zass does not deny that he possesses responsive documents; concedes that they sit in his actuarial firm's email; offers no evidence of undue burden; and continues to publicly tout his "critical role" in the 777 Re wind-down. Meanwhile, the Southern District of New York has sustained Leadenhall's RICO, fraud, and other claims regarding the fraudulent scheme between 777 and A-CAP, of which 777 Re was a critical instrumentality. SDNY Action, ECF 605. Yet despite Leadenhall's repeated offers to narrow the subpoena, Mr. Zass refuses to produce a single document. The motion should be granted.

**I. Mr. Zass Concedes That He Possesses Responsive Documents.**

Since Leadenhall filed this motion, Mr. Zass has continued the drumbeat of social media posts about his unique knowledge responsive to Leadenhall's subpoena. Mr. Zass dismisses his LinkedIn posts as "marketing materials" reflecting only "general knowledge" about transactions "occurring years before the posts were even made." Opp. at 9. Those are the transactions at issue, and his posts since Leadenhall moved—as recently as October 8, 2026—belie that characterization. On September 18, 2026, he wrote, "We know a lot on 777 Partners too!" and that "[t]he canary started chirping with … 777 Re / 777 Partners." Ex. A at 1, 2. On September 23, he made an overseas business trip to London where he presented to several hundred persons on "Case study lessons from 777 Re: private asset ambitions and the story of an insurer's collapse," Ex. B, then remarked that "[t]here was a lot more I wanted to say but given the circumstances it was best to stay silent." Ex. A at 3; *see also* Ex. C (Oct. 2, 2026 article from *Insurance Investor Live* on Mr. Zass' presentation on 777 Re). Less than a week later, on September 27 and on the eve of another international business conference, this time in Bermuda, Mr. Zass touted "the critical role me and my team had in the successful 2024 wind-down." Ex. A at 4. These are not "speculation drawn from social media," Opp. at 9, but Mr. Zass' own representations of first-hand knowledge of 777

Re, 777 Partners, and A-CAP—the subjects of Leadenhall's document requests. Mot. at 5–6.

Mr. Zass conducted his 777 Re business through the email account of his firm, Actuarial Risk Management ("ARM"), and through personal text messages, so the documents sought "reside in Mr. Zass' own possession, not in 777 Re's systems." Mot. at 9. Mr. Zass does not dispute this; he argues instead that compliance would require his counsel "to analyze years of his actuarial firm's emails," Opp. at 9, conceding that his files contain responsive 777 Re-related communications. His suggestion that relevant emails "presumably appear on 777 Re's own document systems," *id.*, is unsupported and beside the point: 777 Re is likewise a non-party to the SDNY Action, ECF 2 at 10, so pointing to 777 Re simply substitutes one non-party for another. Furthermore, 777 Re, which Mr. Zass wound down, is no longer operating, and its affiliates that are defendants in the SDNY Action are in chapter 11 bankruptcy, with claims against them stayed. A subpoena recipient cannot escape his own Rule 45 obligations by pointing to another non-party that may hold overlapping documents. *See, e.g.*, *Williams v. City of Dallas*, 178 F.R.D. 103, 111–12 (N.D. Tex. 1998) (rejecting non-parties' argument that materials could be obtained "from other sources, including the parties," as "irrelevant"); *cf. Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820–21 (5th Cir. 2004).

Nor does it matter that Mr. Zass is not expressly referenced by name in the complaint. *See* Opp. at 7. The test is relevance to the claims and defenses, Fed. R. Civ. P. 26(b)(1), and Leadenhall's complaint devotes extensive allegations to A-CAP's relationship with 777 Re, which Mr. Zass ran as Interim CEO. SDNY Compl. ¶¶ 230–38; *see, e.g.*, *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 451, 455–56 (N.D. Tex. 2015) (non-party not "named in the underlying lawsuit" is, once served, "subject to discovery obligations that the subpoena imposes").

**II. Documents in Mr. Zass' Possession May Not Be Obtained from the Parties.**

Mr. Zass' assertion "[u]pon information and belief" that Leadenhall "took control of 777

Re, and its systems," Opp. at 3, 8, is false, unsupported by any evidence, and nonsensical—Leadenhall would not subpoena documents it already has.

Nor is the subpoena duplicative of party discovery. *See* Opp. at 8. His counsel concedes that Mr. Zass has "no insight into what has and has not been produced in the SDNY Action." ECF 10-1 at 2. That A-CAP produced "hundreds" of communications involving Mr. Zass only confirms his centrality; A-CAP's files cannot capture his communications with anyone else, ECF 2 at 10, and A-CAP's productions in the 777 bankruptcy contain no documents from Mr. Zass' or ARM's files. In any event, overlap with party discovery is no bar. *See, e.g.*, *Williams*, 178 F.R.D. at 111 ("The fact that defendants also have the evidence is irrelevant."); *Wiwa*, 392 F.3d at 820–21 (ordering compliance with modified non-party subpoena notwithstanding objection that requesting party had already received defendant's documents).

Mr. Zass' reliance on *El Paso Disposal, LP v. Ecube Labs Co.*, 2025 WL 1879607, at *5 (W.D. Tex. July 3, 2025), is misplaced. The court there recognized that a non-party may be compelled to produce documents the requesting party cannot obtain from a party, *id.* at *3, and denied the motion only because the defendant had already produced the allegedly missing documents *and* the non-party had produced the key agreement. *Id.* at *4–5. Here, no party has produced or agreed to produce the documents Leadenhall seeks, ECF 8-3 at 2–3, and Mr. Zass has produced nothing. *See Williams*, 178 F.R.D. at 111 (party's "need to obtain evidence from a nonparty is heightened by the unavailability of discovery from a party").

Nor is abeyance warranted, as the predicate for that request—A-CAP's motion to stay the SDNY Action, ECF 8-2 at 4—has now been denied. Opp. at 4. There is no basis to defer compliance until the parties finish discovery. *See Andra*, 312 F.R.D. at 452–53, 455–56 (compelling non-party's production of internal documents even while party discovery is ongoing).

## III. Mr. Zass Has Not Substantiated Any Burden of Responding to the Subpoena, Which Leadenhall Has Repeatedly Offered to Narrow as Necessary.

The party resisting a subpoena bears the burden of showing that compliance would be unreasonable, *Flynn v. Sanchez Oil & Gas Corp.*, 2020 WL 4353180, at *1 (W.D. Tex. July 29, 2020), and non-party status alone does not establish undue burden. *Williams*, 178 F.R.D. at 112. Mr. Zass submits no declaration and no estimate of volume or cost—only the unsupported assertion that the cost "to even quantify the number of potentially relevant documents" is itself a burden. Opp. at 9. His complaint that Leadenhall never proposed narrower requests, *id.* at 5–6, ignores his refusal to meet and confer about what documents he has and which requests, if any, yield voluminous results. And his claim that he "answered" Leadenhall's question on a call as to whether he had potentially relevant text messages from 2021 to 2022, *id.* at 6, omits that he produced nothing. Mr. Zass' speculative and unsupported complaints about burden are also disingenuous given the significant financial benefits he received at 777 Re, both as Interim CEO and as a consultant, and the fact that he continues to exploit his knowledge of those transactions for financial gain. Leadenhall remains willing to narrow its requests.

**IV. Cost-Shifting Is Unwarranted.**

Rule 45 protects non-parties from "significant expense," Fed. R. Civ. P. 45(d)(2)(B)(ii), not from the "natural and expected consequence" of being subpoenaed for relevant information. *Andra*, 312 F.R.D. at 455–56. A non-party claiming expense must prove it "by submitting affidavits or offering evidence revealing the nature of the burden." *Am. Fed'n of Musicians v. Skodam Films, LLC*, 313 F.R.D. 39, 44 (N.D. Tex. 2015); *Andra*, 312 F.R.D. at 449; *see McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (absent proof, recitations of expense and burden are conclusory). Mr. Zass offers neither. And because the scope of production has yet to be negotiated (as Mr. Zass has refused to negotiate it), costs cannot be calculated "with sufficient precision." *See Williams*, 178 F.R.D. at 113–14 (declining to fix costs even where defendant submitted affidavit quantifying burdensome volume of documents); *Simms*

*v. Nat'l Football League*, 2013 WL 11570288, at *3 (N.D. Tex. Oct. 22, 2013) (shifting costs only after the non-party complied with a court order and documented nearly $200,000 in fees).

The *Simms* factors Mr. Zass invokes cut against him. Opp. at 10. Courts start from "the general assumption that the complying party bears the costs of production," *Andra*, 312 F.R.D. at 458, and consider (1) whether the non-party has an interest in the outcome, (2) whether it can more readily bear the costs than the requesting party, and (3) whether the litigation is of public importance. *Simms*, 2013 WL 11570288, at *2. *First*, cost-shifting is inappropriate where the non-party "was substantially involved in the underlying transaction and 'could have anticipated that the transaction would reasonably spawn some litigation.'" *Id.*; *accord Andra*, 312 F.R.D. at 458 (denying cost-shifting given non-party's "level of involvement"). Mr. Zass ran 777 Re as Interim CEO, personally negotiated the recapture transactions at issue, Mot. at 2, and markets his "critical role" in its wind-down. Ex. A at 4. *Second*, Leadenhall has offered to confer on search parameters to limit costs, ECF 8-3 at 3, while Mr. Zass withholds the status of the insurance and indemnification claims his counsel says he submitted. ECF 8-2 at 3. If an insurer or indemnitor will pay, there is no "significant expense" to protect against. *Third*, the SDNY litigation—involving an alleged fraud of more than $600 million, diverted policyholder funds, and parallel criminal and SEC proceedings, Mot. at 1–2, claims the court sustained on September 21, 2026, ECF 605—is of public importance. *See Simms*, 2013 WL 11570288, at *2–3 (recognizing public importance in cases "involving massive international bank fraud"). The Court should order compliance now and deny Mr. Zass' request to condition production on payment.

## V. Conclusion

The Court should compel Mr. Zass to produce responsive documents by a date certain and deny his requests for abeyance and cost-shifting.

Dated: October 9, 2026
Austin, Texas

**KING & SPALDING LLP**

*/s/ Jordan W. Leu*

Jordan W. Leu (TX Bar No. 24070139)
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600
jleu@kslaw.com

Luke Roniger (TX Bar No. 24116989)
500 W. 2nd St. #1800
Austin, TX 78701
(512) 457-2044
lroniger@kslaw.com

Leigh M. Nathanson (admitted *pro hac vice*)
Brian Donovan (admitted *pro hac vice*)
1290 Avenue of the Americas
New York, NY 10104
(212) 556-2100
lnathanson@kslaw.com
bdonovan@kslaw.com

*Attorneys for Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC*

**CERTIFICATE OF SERVICE**

I, Jordan W. Leu, hereby certify that on this 9th day of October, 2026, a true and correct copy of Leadenhall's Reply in Support of Its Motion to Compel Non-Party Corwin Zass to Respond to Subpoena Duces Tecum was served via email on the following counsel:

Todd Harrison
Christopher J. Whalen
Alan N. Feinsod
McDermott Will & Schulte LLP
One Vanderbilt Avenue
New York, NY 10017-3852
(212) 547-5400
tdharrison@mcdermottlaw.com
chwhalen@mcdermottlaw.com
afeinsod@mcdermottlaw.com

Dated: October 9, 2026
Austin, Texas

**KING & SPALDING LLP**

*/s/ Jordan W. Leu*

Jordan W. Leu (TX Bar No. 24070139)
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600
jleu@kslaw.com